IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:05 CV 243

| | |
|---|---|
| CATHERINE BENNETT, individually and CATHERINE BENNETT, as Administratix of the Estate of Arthinel Bennett, <br><br> Plaintiffs, <br><br> v. <br><br> STONEBRIDGE LIFE INSURANCE CO., <br><br> Defendant. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on the Defendant's "Motion to Strike Certain of Plaintiff's Expert Witnesses"(Document No. 70) filed March 28, 2007 and Defendant's "Motion for Summary Judgment" (Document No. 72) filed March 28, 2007. These matters are now ripe for disposition.

## BACKGROUND

On June 23, 2003, Plaintiff's husband, Arthinel Bennett, was involved in a single-vehicle collision with a utility pole when he swerved off the road for no apparent reason. Fifty minutes later, he was pronounced dead at the hospital by Dr. Ugochukwu Okereke. In July of the same year, the Plaintiff submitted a claim for coverage under an accidental death insurance policy with the Defendant insurance company.

When making the claim, the Plaintiff provided the insurance company with a certified

1

Death Certificate that stated the cause of death to be myocardial infarction, a Proof of Death statement completed by Dr. Kenneth Shank which stated that the primary cause of death was most likely cardiopulmonary arrest secondary to Type II diabetes and trauma, and the police report. After reviewing these documents and contacting the North Carolina Medical Examiner's office, the Defendant insurance company denied the Plaintiff's claim for accidental death based on the express terms of the insurance policy. The insurance policy specifically spelled out that the policy provided coverage only for accidental injuries occurring directly and independently of all other causes. Based upon its investigation, the Defendant insurance company decided that the decedent's death was caused, in whole or in part, by heart disease. The Defendant insurance company issued the Plaintiff a denial letter that stated in pertinent part:

> According to the information provided on the Certified Death Certificate, the immediate cause of death is myocardial infarction due to (or as a consequence of): HTN (hypertension) due to (or as a consequence of) DM (diabetes mellitus). On the Accident Report, under physical condition, it states-medical condition. The report also states "Doctor advised that the cause of death most likely a massive heart attack prior to accident." Based on this information and the above Provisions and Exclusions, it does not appear that your husband's death was due to a bodily injury resulting from an accident directly and independently of all other causes as required by the Certificate. Therefore, we are unable to provide benefits. . . . If you have any additional information which you feel may affect our decision, please forward it to us for our review.

After receiving this letter, the Plaintiff did not submit any further information to the Defendant insurance company. However, the Plaintiff did obtain a copy of the insurance policy, and filed this action on April 19, 2005. The Plaintiff claims the decedent's death was in fact covered under the accidental death policy issued by the Defendant, and she seeks additional damages for unfair and deceptive trade practices, bad faith, and punitive damages. On May 31, 2006, Plaintiff filed a Motion to Extend Time for Discovery to obtain the opinion of other

doctors as to the cause of the decedent's death. The court granted the Motion and entered it on June 5, 2006 extending the deadline to designate expert witnesses until July 1, 2006. On June 2, 2006 Plaintiff identified Dr. Fred McQueen and Dr. Gary Henry as expert witnesses. The Defendant now contends that the entire testimonies of Dr. Henry and Dr. McQueen should be excluded based upon *Daubert* and its progeny. The Defendant also contends that the testimony of Dr. Okereke should be limited to testifying only as a treating physician to observations and opinions originally obtained during the treatment of Plaintiff's decedent. The Defendant contends that Dr. Okereke now sets forth new opinions that go beyond his observations and opinions that he originally obtained by treating Mr. Bennett and these new opinions should have been disclosed on or before July 1, 2006, pursuant to the court's Order. The Defendant argues that the Plaintiff fails to submit competent evidence that the decedent's death resulted directly and independently of all other causes from bodily injuries caused exclusively by accidental means. The Defendant further contends that because the forecast of evidence cannot support a claim for unfair and deceptive trade practices, bad faith, or punitive damages, summary judgment should be entered in favor of the Defendant on each of the claims contained in the Complaint.

## DISCUSSION

A.    **Defendant's Motion to Strike Expert Witnesses**

The Defendant claims that the expert and/or fact testimonies of Dr. McQueen, Dr. Henry, and Dr. Okereke should be stricken from this case for reasons such as untimeliness and lack of qualification. The Federal Rules of Civil Procedure states that expert witness "disclosures shall be made at the times and in the sequence directed by the court." F.R.C.P. 26(a)(2)(C). This Rule

is to ensure that the opposing party is not prejudiced in any way and to ensure that matters are handled in an efficient and timely manner. Further, a federal court has a special "gate-keeping" obligation to screen proffered testimony and expertise to ensure that such evidence is both reliable and relevant before being admitted at trial. Id. at 589. The court is to "determine whether an expert's testimony reflects 'scientific knowledge', whether the findings are 'derived by the scientific method', and whether the work product is 'good science.'" Doe 2 v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465 (M.D.N.C. 2006). Here, the court finds that the Defendant has experienced no prejudice as to the disclosure or testimony of Dr. Henry, Dr. McQueen, or Dr. Okereke. Trial in this case is currently set for the November 2007 term, and all of the information relevant to the expert witness testimony was revealed to the Defendant well in advance of this date. Further, Dr. McQueen, Dr. Henry, and Dr. Okereke all possess the appropriate qualifications to testify in this case. Dr. McQueen was a medical examiner for more then thirty years and has examined thousands of bodies and determined causes of death including those due to traumatic injury. His expert opinion is a reliable source of evidence as it is based on years of experience in medical examination. Dr. Henry was also a medical examiner for a number of years with experience in past automobile accidents and trauma. He worked in a hospital emergency room for a number of years where he treated a large number of patients. He has been a physician for over 25 years, and his expert opinion is also a reliable source of evidence. Dr. Okereke was not aware of all of the facts surrounding the accident when he first gave his opinion. He is being used as a fact or treating physician witness in the case, and as such, he is entitled to review the entire set of facts of the case and give his opinion as to the true cause of death. Dr. Okereke cannot be forced to give an opinion based on a limited set of facts, but

4

rather, his opinion must be based on the facts in their entirety. Accordingly, the Defendant's motion to strike the testimony of these witnesses will be denied.

      **B.**      **Defendant's Motion for Summary Judgment as to Punitive Damages, Bad Faith, and Deceptive Trade Practices**

      The Defendant contends that summary judgment should be granted in its favor as to the claims by the Plaintiff for unfair and deceptive trade practices, bad faith, and punitive damages. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party may not rest on his pleadings, but must demonstrate that specific material facts give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When considering a motion for summary judgment, a district court views the record in the light most favorable to the nonmoving party. See Clark v. Alexander, 85 F.3d 146, 150 (4th Cir. 1996).

      The court will first address Plaintiff's claim for unfair and deceptive trade practices. "To establish a claim under the UDTPA [Unfair or Deceptive Trade Practices Act], N.C. Gen. Stat. § 75-1.1 (a), a complainant must show: 1)an unfair or deceptive act or practice, 2) in or affecting commerce 3) which proximately caused injury to plaintiffs." Blis Day Spa v. Hartford Ins. Group, 427 F. Supp. 2d 621 (W.D.N.C. 2006). Further, "an insurance company violates the UDTPA by not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Id. In *Blis Day Spa,* the plaintiff business sued its insurer for bad faith, punitive damages, and unfair and deceptive trades practice when the

5

insurer refused to pay the plaintiff on a claim filed by the plaintiff following a fire that caused the plaintiff to relocate. However, the plaintiff was unable to present evidence that the insurer ever recognized the claim's validity and then arbitrarily refused to pay, or that the insurer's denial of the claim was the product of anything other than an honest disagreement or honest mistake. Id. at 635. Because of this, the *Blis Day Spa* court held summary judgment in favor of the defendant was proper as to the plaintiffs' unfair and deceptive trade practices claim. Id. The facts herein establish that the Defendant acknowledged the Plaintiff's insurance claim, and that the Defendant did in fact take reasonable steps in investigating the claim. The Defendant's evidence shows that at the time of the investigation, the Defendant looked into the decedent's Death Certificate, the police report, and the Proof of Death Statement, all of which stated that the decedent's underlying medical conditions contributed to his death. Defendant then composed a denial letter to the Plaintiff which clearly expressed these reasons for denial. The steps taken by the Defendant are reasonable and appropriate, and the Plaintiff has not provided any evidence to suggest otherwise. Accordingly, Plaintiff fails to provide any evidence that Defendant committed an unfair or deceptive trade practice.

"To prevail on a claim for bad faith in the insurance context a complainant must establish that there was: 1) a refusal to pay after recognition of a valid claim; 2) 'bad faith'; and 3) 'aggravating or outrageous conduct.'" Id. at 631. In *Blis Day Spa*, the court stated that, "[W]hen an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity fo the claim, the insurer is entitled to judgment as a matter of law because the Plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer." Id. at 632. "Summary judgment is appropriate in favor of the insurer on a bad faith refusal to settle claim when [a] coverage issue

6

[is] reasonably in dispute." Id. In the case at bar, there is an honest disagreement as to whether there is a valid claim for the accidental death insurance proceeds. At the time of the Defendant's investigation, all signs showed that the decedent's death was caused by circumstances outside of the car accident.

In regard to the Plaintiff's claim for punitive damages, the Defendant is likewise entitled to summary judgment. In order for Plaintiff to recover on her claim for punitive damages under North Carolina law, she "would have to produce evidence that the Defendant has determined that the claim was valid, but nevertheless refused to pay, and that such refusal was in bad faith with intent to further damage the Plaintiff[]." Blis Day Spa, 427 F. Supp. 2d at 636. In the case at bar, there is no genuine issue of material fact as to whether the Defendant determined the insurance claim to be valid and nevertheless refused to pay. The overwhelming evidence shows that the Defendant had good reason to deny the claim, and that the Defendant spelled out the reasons for denying the claim in a letter to the Plaintiff. The Defendant also provided the Plaintiff an opportunity, of which she failed to take advantage, to give reasons why its decision should be changed. There is no evidence to support the contention that the Defendant acted fraudulently, maliciously, or willful or wantonly.

### C. Defendant's Motion for Summary Judgment as to Claim for Insurance Benefits

The Defendant contends that summary judgment should be granted in its favor as to the Plaintiff's claims for coverage under the Accidental Death Insurance Policy. To prevail on her claim, the Plaintiff will have to show that the decedent's death was covered under the policy - that is, the decedent's death occurred directly and independently of all other

7

causes. Horn v. Protective Life Ins. Co., 143 S.E.2d 70, 72 (1965). "[W]here death is caused by a preexisting condition in *cooperation with* an accident it is not an accidental bodily injury independent of all other causes." Hicks v. Old Republic Life Ins. Co., 225 S.E.2d 164, 166 (1976). North Carolina courts have adopted the rule that recovery should be denied under accidental death policies if there is a preexisting disease which combines with the injuries sustained in the accident and causes an earlier death.

Here, when viewing the evidence in the light most favorable to the Plaintiff, there is a genuine issue of material fact regarding the decedent's cause of death. The Plaintiff has presented evidence by three medical experts that the decedent's cause of death may have been the car accident. Therefore, a question of fact as to what actually caused the decedent's death exists, and this is an issue for a jury to decide.

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Summary Judgment as to the Plaintiff's claims for unfair and deceptive trade practices, bad faith, and punitive damages be **GRANTED**; the Defendant's Motion for Summary Judgment as to the Plaintiff's claim for coverage under the accidental death policy be **DENIED**; and the Defendant's Motion to Strike Certain of Plaintiff's Expert Witnesses be **DENIED**.

Signed: September 4, 2007

*[signature]*

Graham C. Mullen
United States District Judge